**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| LARRY FRISBY, on behalf of himself and all others similarly situated, <br><br> Plaintiff , <br><br> v. <br><br> SKY CHEFS, INC. and LSG GROUP, LLC, | Civil Action No. <br><br><br><br> JURY TRIAL DEMANDED |

## <u>CLASS AND COLLECTIVE ACTION COMPLAINT</u>

Plaintiff Larry Frisby, individually and on behalf of all others similarly situated ("Plaintiffs"), brings this Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, for common law negligence, for violations of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* violations of the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.* and the City of Chicago Minimum Wage Ordinance, Chapter 1-24, Section 1-24-020, *et seq.* (the "Ordinance") against Sky Chefs, Inc. and LSG Group ("Defendants"), and alleges as follows based on personal knowledge as to himself, and on the investigation of his counsel, and on information and belief as to all other matters, and demands trial by jury:

## NATURE OF ACTION

1.      Defendants operate in-flight catering and related food services for the airline industry, world wide.  Plaintiff brings this action for damages and other legal and equitable remedies

resulting from the illegal actions of Defendants in: (A) collecting, storing and using Plaintiff's

and other similarly situated individuals' biometric identifiers[1] and biometric information[2]

(referred to collectively at times as "biometrics") without informed written consent, in direct

violation of the BIPA; and (B) failing to compensate their employees properly for all time

worked in violation of the FLSA, the IMWL and the Ordinance, depriving these employees of

their earned straight time and overtime wages.

**PARTIES**

2.      Plaintiff Larry Frisby ("Plaintiff" or "Frisby") is, and has been at all relevant times, a

resident and citizen of Chicago, Illinois.   Plaintiff is and has been at all relevant times an

employee of Defendants pursuant to the FLSA, the IMWL and the Ordinance.

3.      Defendant Sky Chefs, Inc. is a Delaware corporation registered to do business in

Illinois, with its headquarters and principal executive offices located in Irving, Texas.

Defendant Sky Chefs, Inc. is and has been at all relevant times Plaintiff's employer pursuant to

the FLSA, the IMWL and the Ordinance.

4.      Defendant LSG Group, LLC is an Illinois limited liability company.   LSG Group is,

upon information and belief, a collection of companies providing products and services for the

travel industry.   Under the LSG Sky Chefs brand, Defendants are a provider of in-flight

catering services for the airline industry; and also provides extended services on other aspects

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry", among others.

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual.

of in-flight service. See, https://www.lsgskychefs.com/what-we-do/airline-catering/. Upon information and belief, LSG Group is a subsidiary of Deutsche Lufthansa AG, the German airline, and is affiliated with a number of related companies as set forth on the Sky Chefs website at https://www.lsgskychefs.com/contact. Defendant LSG Group, LLC is and has been at all relevant times Plaintiff's employer pursuant to the FLSA and the IMWL.

5.     Defendants have acted jointly as Plaintiff's employer:  Personnel documents in Plaintiff's file reflect compliance documents  and manuals issued on letterhead from "LSG Sky Chefs" to Plaintiff, testing on behalf of "Sky Chefs, Inc.", new hire orientation documents from "LSG Sky Chefs", and a Direct Deposit Authorization form on "LSG Sky Chefs" letterhead, for example.

## JURISDICTION AND VENUE

6.     Jurisdiction over this action is conferred on this Court by 28 U.S.C. § 1331 on the basis of federal question jurisdiction, as the matter concerns an action arising under the laws of the United States, and by Section 16(b) of the FLSA, 29 U.S.C. § 216(b).  This Court's supplemental jurisdiction over Plaintiffs' Illinois claims arising under BIPA, the IMWL and Plaintiffs' municipal ordinance claim arising under the Ordinance, is required pursuant to 28 U.S.C. § 1367(a), because those claims are so related to claims in the action within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

7.     This Court has personal jurisdiction over the Defendants for reasons that include:

        (a)   Defendants conduct business and enter into contracts within the State of Illinois and in this District and with persons and businesses located within the State of Illinois

and in this District;

(b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices, as well as the retention of biometric data, that gave rise to the FLSA claims and Illinois Biometric Information Privacy Act claims asserted herein, and Defendants purposefully directed their improper policies and practices at residents of the State of Illinois and their employees who reside in this District, among other people;

(c) Defendants have purposefully directed the marketing of their services at residents and businesses located in the State of Illinois; and

(d) Defendants purposefully solicit Illinois businesses and residents to enter into food supply and raw ingredient agreements.

8.     Venue is proper in this District because Defendants conduct business transactions in this District, and because the causes of action arose, in substantial part, in this District. Venue is also proper because Plaintiff and most if not all of the putative class and collective members reside in this District.

## FACTUAL BACKGROUND

### I.  Illinois's Biometric Information Privacy Act

9.     The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-

facilitated transactions." *Id.*

10.     In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which was recently selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias," 740 ILCS 14/5(b) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like LSG or Sky Chefs, Inc. may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.*; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or his biometric identifiers or information, *see id.*; and (4) publishes publicly-available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 ILCS 14/15(a).

11.     In direct violation of each of the foregoing provisions of § 15(a) and § 15(b) of the BIPA, Defendants are actively collecting, storing, and using – without providing notice, obtaining informed written consent or publishing data retention policies – the biometrics of hundreds of individuals who are or have been employed by Defendants.

12.     Specifically, Defendants have created, collected and stored thousands of fingerprints from hundreds of individuals, many of whom are employees residing in the State of Illinois. Each fingerprint is unique to a particular individual, identifying one and only one person.

13.     Plaintiff brings this action individually and on behalf of all others similarly situated to

recover unpaid compensation due and owing Plaintiff and those employees of Defendants similarly situated, and to prevent Defendants from further violating the privacy rights of Illinois residents, and to recover statutory damages for Defendants' unauthorized collection, storage and use of non-users' biometrics in violation of the BIPA.

14.    "Biometrics" refers to unique physical characteristics used to identify an individual.

15.    One of the most prevalent uses of biometrics is in fingerprint technology, which works by scanning an image for fingerprints, extracting feature data based on specific "biometric identifiers" (*i.e.*, details about the print's geometry as determined by whorls, loops, arches and contours), and comparing the resulting "template" against the fingerprints stored in a "fingerprint template database." If a database match is found, an individual may be identified.

16.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

17.    Additionally, to ensure compliance, BIPA provides that, for each violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

18.    BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.    Informs the subject in writing that a biometric identifier or biometric

information is being collected or stored;

b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

c.    Receives a written release executed by the subject of the biometric identifier or biometric information."

*See* 740 ILCS 14/15(b).

19.    As alleged below, Defendants' practices of collecting, storing and using unwitting non-users' biometric identifiers and information without informed written consent violate all three prongs of §15(b) of the BIPA. Defendants' failure to provide a publicly available written policy regarding their schedule and guidelines for the retention and permanent destruction of their non- users' biometric information also violates §15(a) of the BIPA.

**II. Defendants Violate the Biometric Information Privacy Act**

19.    Defendants use an employee time tracking system that requires employees to use their fingerprint as a means of authentication. Unlike a traditional time clock, employees have to use their fingerprints multiple times each day in order to "punch" in and out of work.

20.    Upon information and belief, Defendants fail to inform their employees that they disclose employees' fingerprint data to at least one known out-of-state third-party vendor, Kronos; amongst themselves; and to other, currently unknown, third-party vendors that maintain the biometric data in their data centers; fail to inform their employees of the purposes and duration for which they collect their sensitive biometric data; and fail to obtain written releases from employees before collecting their fingerprints.

21.    Furthermore, Defendants fail to provide employees with a written, publicly available

policy identifying their retention schedule and guidelines for permanently destroying employees' fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by BIPA.

22.     Specifically, when employees are hired, Defendants require them to have their fingerprints scanned to enroll them in the employee database.

23.     Upon information and belief, Defendants lack retention schedules and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data and has not and will not destroy Plaintiff's and other similarly-situated individuals' biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

24.     Defendants' employees are not told what might happen to their biometric data if and when any Defendant merges with another company, or worse, if and when any Defendant's business ceases to operate.

25.     Since Defendants do not publish a BIPA-mandated data retention policy nor disclose the purposes for their collection of biometric data, Defendants' employees have no idea whether any Defendant sells, discloses, re-discloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated are not told to whom either Defendant currently discloses their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

26.     These violations have raised a material risk that Plaintiff's and other similarly- situated individuals' biometric data will be unlawfully accessed by third parties.

27.     By and through the actions detailed above, Defendants disregarded Plaintiff's and other

similarly-situated individuals' legal rights in violation of BIPA.

28.     Plaintiff Larry Frisby worked for Defendants from approximately November, 2015 through  March, 2019, as a driver's helper, a driver and in other related positions, in customer service.

29.     Plaintiff Frisby was scheduled to work, and did work full-time, at least eight hours per day, forty hours per work week; and frequently worked more than forty hours per work week.

30.     As a new employee, Frisby was required to scan his fingerprint so Defendants could use it as an authentication method to track his time.

31.     Defendants subsequently stored Frisby's fingerprint data in their collective employee database.

32.     Frisby was required to scan his fingerprint each time he began and ended his workday, and at other intermittent times throughout the work day.

33.     Frisby has never been informed of the specific limited purposes or length of time for which Defendants collected, stored, used and/or disseminated his biometric data.

34.     Frisby has never been informed of any biometric data retention policy developed by Defendants, nor has he ever been informed whether Defendants will ever permanently delete his biometric data.

35.     Frisby has never been provided with nor ever signed a written release allowing Defendants to collect, store, use, or disseminate his biometric data.

36.     Frisby has continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

37.     No amount of time or money can compensate Frisby if his biometric data is

compromised by the lax procedures through which Defendants captured, stored, used, and disseminated his and other similarly-situated individuals' biometrics, and Frisby would not have provided his biometric data to Defendants if he had known that they would retain such information for an indefinite period of time without his consent.

38.     A showing of actual damages is not necessary in order to state a claim under BIPA. Nonetheless, Frisby is aggrieved because he suffered an injury-in-fact based on Defendants' violations of his legal rights. Additionally, Frisby suffered an invasion of a legally protected interest when Defendants  secured his personal and private biometric data at a time when they had no right to do so, a gross invasion of his right to privacy. BIPA protects employees like Frisby from this precise conduct, and neither of Defendants  had a lawful right to secure this data or share it with third parties absent a specific legislative license to do so.

39.     Frisby's biometric information is economically valuable, and such value will increase as the commercialization of biometrics continues to grow. As such, Frisby was not sufficiently compensated by either of Defendants for their retention and use of his and other similarly-situated employees' biometric data. Frisby would not have agreed to work for Defendants for the compensation he received if he had known that they would retain his biometric data indefinitely and disseminate it amongst each other, and to other third parties without adequate compensation to Plaintiff.

40.     Frisby also suffered an informational injury because Defendants failed to provide him with information to which he was entitled by statute. Through BIPA, the Illinois legislature has created both a right and an injury. An employee has the right to receive certain information prior to an employer securing their highly personal, private, and proprietary biometric data.

Conversely, the employee suffers injury when he or she does not receive this extremely critical information.

41.     Pursuant to 740 ILCS 14/15(b), Frisby was entitled to receive certain information prior to Defendants securing his biometric data. Namely, Frisby was entitled to information advising him of the specific limited purpose(s) and length of time for which Defendants collect, store, use, and disseminates his private biometric data; information regarding Defendants' biometric retention policy; and, a written release allowing Defendants to collect, store, use, and disseminate his private biometric data. By depriving Frisby of this information, Defendants injured him. *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449 (1989); *Federal Election Commission v. Akins*, 524 U.S. 11 (1998).

42.     Finally, as a result of Defendants' conduct, Frisby has experienced personal injury in the form of mental anguish. For example, Frisby experiences mental anguish and injury when contemplating what would happen to his biometric data if either of Defendants went bankrupt, whether either of Defendants will ever delete his biometric information, and whether (and to whom) Defendants share his biometric information.

43.     Frisby has plausibly inferred actual and ongoing harm in the form of monetary damages for the value of the collection and retention of his biometric data; in the form of monetary damages by not obtaining additional compensation as a result of being denied access to material information about Defendants' policies and practices; in the form of the unauthorized disclosure of his confidential biometric data to third parties; and, in the form of the continuous and ongoing exposure to substantial and irreversible loss of privacy.

44.     As Frisby is not required to allege or prove actual damages in order to state a claim

under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by Defendants.

### III. Defendants Violate the FLSA, the IMWL and the Ordinance

45.     Frisby typically clocked in at least five to six minutes prior to his scheduled shift, because he was informed when his employment began that he would be written up if not clocked in prior to his scheduled work time.

46.     It was Defendants' policy and practice to require that Plaintiff Frisby and its other non-exempt employees clock in for their work at least five to six minutes prior to the start time of their scheduled shift; and to discipline such employees who did not clock in prior to their scheduled shift.

47.     No time clocked in by Plaintiff or other similarly situated employees of either of Defendants prior to the start time of the scheduled shift was in fact compensated by Defendants, notwithstanding that Plaintiff and other similarly situated employees performed compensable work during that time.

48.     Defendants instead rounded the pre-shift and post-shift time worked by Plaintiff and other similarly situated employees to their regularly scheduled shift times; and such rounding was typically to the detriment of the employee, and to the benefit of Defendants.

49.     Plaintiff and other similarly situated employees of Defendants were required to work through their designated meal break virtually every day, and such time has not been compensated by Defendants.

50.     While Plaintiff worked for Defendants, he was an hourly employee earning

approximately $13.00 to $16.00 per hour.

51.    During his employment, Plaintiff typically worked approximately 50 - 55 hours each work week.

52.    Plaintiff was required to work off-the-clock for Defendants throughout his employment with Defendants.

53.    From November, 2015 to March, 2019, Plaintiff worked in excess of 100 hours of unpaid overtime for Defendants.

54.    In approximately March, 2019, Plaintiff voluntarily terminated his employment.

55.    Prior to his termination, Plaintiff had never received any write-ups, warnings, or other disciplinary actions from any of his supervisors.

## CLASS ALLEGATIONS

56.    Pursuant to Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed; and pursuant to the IMWL and the Ordinance, to recover unpaid compensation, penalties, interest and attorney's fees and costs, and other damages owed.

57.    As discussed *supra*, Section 14/15(b) of BIPA prohibits a company from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it first (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose and length of

time for which a biometric identifier or biometric information is being collected, stored, and used; **and** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS 14/15.

58. Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of similarly-situated employees under BIPA (the "BIPA Class"):

> All individuals who had their fingerprints or biometric identifiers were collected, captured, received, stored, or otherwise obtained or disclosed in the State of Illinois by any Defendant during the applicable statutory period.

59. Plaintiff seeks class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of similarly-situated employees under IMWL and the Ordinance (the IMWL and Ordinance class"):

> All non-exempt employees who performed work for at least 37.5 hours per workweek for any Defendant in the State of Illinois who were not compensated for all time worked beyond their scheduled shifts and/or whose time worked was rounded by Defendants to the detriment of such workers during the applicable statutory period.

60. This action is properly maintained as a class action under Rule 23 because:

A. The class is so numerous that joinder of all members is impracticable;

B. There are questions of law or fact that are common to the class;

C. The claims of Plaintiff are typical of the claims of the class; and,

D. Plaintiff will fairly and adequately protect the interests of the class.

**Numerosity**

61. The total number of putative class members exceeds one-hundred (100) individuals. The exact number of class members can easily be determined from Defendants' payroll records.

**<u>Commonality</u>**

62.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the BIPA Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to comply with BIPA and their negligence.  The common questions of law and fact include, but are not limited to the following:

A.      Whether Defendants collected, captured or otherwise obtained Plaintiff's biometric identifiers or biometric information;

B.      Whether Defendants properly informed Plaintiff of their purposes for collecting, using, and storing his biometric identifiers or biometric information;

C.      Whether Defendants obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's biometric identifiers or biometric information;

D.      Whether Defendants disclosed or re-disclosed Plaintiff's biometric identifiers or biometric information;

E.      Whether Defendants have sold, leased, traded, or otherwise profited from Plaintiff's biometric identifiers or biometric information;

F.      Whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction with the employee, whichever occurs first;

G.      Whether Defendants comply with any such written policy (if one exists);

H.      Whether Defendants used Plaintiff's fingerprints to identify him;

I.      Whether Defendants' violations of BIPA have raised a material risk that Plaintiff's biometric data will be unlawfully accessed by third parties;

J.      Whether the violations of BIPA were committed negligently; and

K.      Whether the violations of BIPA were committed willfully.

63.     Likewise, there is a well-defined commonality of interest in the substantial questions of

law and fact concerning and affecting the IMWL and Ordinance Class in that Plaintiff and all members of the Class have been harmed by Defendant's failure to compensate them for all time worked in violation of the IMWL and the Ordinance. The common questions of law and fact include, but are not limited to the following:

      A.    Whether Defendants required that Plaintiff report for work and clock in prior to his scheduled shifts;

      B.    Whether Defendants required that Plaintiff continue work subsequent to the time he was clocked out, after the end of his scheduled shift;

      C.    Whether Defendants required that Plaintiff continue work during his unpaid meal breaks;

      D.    Whether Defendants failed to compensate Plaintiff for such time that Defendants required Plaintiff to attend work, prior to his scheduled shifts, after clocking out at the end of his scheduled shifts; and during meal breaks when Plaintiff was required to continue working; and

      E.    Whether the violations of IMWL and/or the Ordinance were committed negligently or willfully.

64.    Plaintiff anticipates that Defendants will raise defenses to all claims that are common to the class.

## **Adequacy**

65.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## **Typicality**

66.    The claims asserted by Plaintiff are typical of the class members he seeks to represent.

Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

67.     Upon information and belief, there are no other class members who have an interest in individually controlling the prosecution of his or his individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to Rule 23(b)(3).

**Predominance and Superiority**

68.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable.  Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

69.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent

and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## FIRST CAUSE OF ACTION
### Violation of Illinois Biometrics Privacy Information Act, 740 ILCS 14/1, *et seq.*

70.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

71.    BIPA requires companies to obtain informed written consent from employees before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject… in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject… in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS 14/15(b) (emphasis added).

72.    BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for that disclosure. *See* 740 ILCS 14/15(d)(1).

73.    Furthermore, BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention – and, importantly, deletion – policy.

Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

74. Defendants fail to comply with these BIPA mandates.

75. Defendants each qualify as a "private entity" under BIPA. *See* 740 ILCS 14/10.

76. Plaintiff is an individual who had his "biometric identifiers" collected by Defendants(in the form of his fingerprints), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS 14/10.

77. Plaintiff's biometric identifiers were used to identify his and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS 14/10.

78. Defendants systematically and automatically collected, used, stored, and disclosed Plaintiff's biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS 14/15(b)(3).

79. Upon information and belief, Defendants systematically disclosed Plaintiff's biometric identifiers and biometric information to at least one out-of-state third-party vendor, Kronos.

80. Upon information and belief, Defendants systematically disclosed Plaintiff's biometric identifiers and biometric information amongst themselves.

81. Upon information and belief, Defendants systematically disclosed Plaintiff's biometric identifiers and biometric information to other, currently unknown, third- parties, which hosted the biometric data in their data centers.

82. Neither of Defendants informed Plaintiff in writing that his biometric identifiers and/or

biometric information were being collected, stored, used, and disseminated, nor did either Defendant inform Plaintiff in writing of the specific purpose and length of term for which his biometric identifiers and/or biometric information were being collected, stored, used and disseminated as required by 740 ILCS 14/15(b)(1)-(2).

83.     Neither of Defendants provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS 14/15(a).

84.     By collecting, storing, using, and disclosing Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Defendants violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS 14/1, *et seq*.

85.     Upon information and belief, Defendants lack retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and has not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

86.     These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

87.     On behalf of herself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring the Smith Defendants and Kronos to comply with BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described

herein; (3) statutory damages of $5,000 for each willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3).

## SECOND CAUSE OF ACTION
### Negligence

88.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

89.     Defendants owed Plaintiff and the Class a duty of reasonable care. Such duty required Defendants to exercise reasonable care in the collection and use of Plaintiff's and the Class's biometric data.

90.     Additionally, Defendants owed Plaintiff and the Class a heightened duty - under which they assumed a duty to act carefully and not put Plaintiff and the Class at undue risk of harm – because of the employment relationship of the parties.

91.     Defendants breached their duties by failing to implement reasonable procedural safeguards around the collection and use of Plaintiff's and the Class's biometric identifiers and biometric information.

92.     Specifically, Defendants breached their duties by failing to properly inform Plaintiff and the Class in writing of the specific purpose or length of time for which their fingerprints were being collected, stored, used, and disseminated.

93.     Defendants also breached their duties by failing to provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprint data.

94.     Upon information and belief, Defendants breached their duties because they lack

retention schedules and guidelines for permanently destroying Plaintiff's and the Class's biometric data and have not and will not destroy Plaintiff's and the Class's biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the employee's last interaction with the company.

95.     These violations have raised a material risk that Plaintiff's and the Class's biometric data will be unlawfully accessed by third parties.

96.     Defendants' breach of their duties proximately caused and continue to cause an invasion of Plaintiff's and the Class's privacy, an informational injury, and mental anguish, in addition to the statutory damage provided in BIPA.

97.     Accordingly, Plaintiff seeks an order declaring that Defendants' conduct constitutes negligence and awarding Plaintiff and the Class damages in an amount to be calculated at trial.

### THIRD CAUSE OF ACTION
### Violation of the FLSA
### Failure to Pay Overtime for All Hours Worked

98.     Plaintiff, individually and on behalf of all similarly situated individuals, restates and incorporates by reference the above paragraphs as if fully set forth herein.

99.      Plaintiff brings this cause of action as a collective action, individually and on behalf of all similarly situated individuals to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.  Pursuant to 29 U.S.C. § 216(b), Plaintiff's signed consent form is attached as Exhibit 1. As this case progresses, it is likely that other individuals will also join this case as opt-in plaintiffs.

100.     Plaintiff and the putative class members are hourly-paid, non-exempt, full-time employees whom Defendants employed at O'Hare International Airport during the Class

Period and whose daily log- in and log-out time was rounded and/or unpaid as described above.

101.    The proposed group of similarly situated persons is defined as:

"All non-exempt employees who performed work for at least 37.5 hours per workweek for any Defendant in the State of Illinois who were not compensated for all time worked beyond their scheduled shifts and/or whose time worked was rounded by Defendants to the detriment of such workers during the applicable statutory period."

102.    Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs and the collective class of overtime compensation and thereby increase Defendants' earnings and ultimately Defendants' profits.

103.    Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

104.    Plaintiffs and the putative class members were not paid for all hours worked in excess of 40 in a week, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. 207(a).

105.    Plaintiffs and the putative class members also were not paid a bona fide regular rate of pay for straight time hours worked when those hours were not tracked and accounted for, but were worked by these individuals.

106.    While working for Defendants, Plaintiffs and members of the putative class were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, that were necessary for the performance of their duties for Defendants, and that were integral and indispensable to their principal activities.  Despite this, Plaintiffs and

other members of the collective class regularly were permitted or required to work "off the clock" as set forth herein that entitled them to compensation therefore.

107.    Defendants required and/or permitted Plaintiffs and the putative class members to work off the clock prior to the beginning of the employee's scheduled shift; and remain on duty on the premises or at a prescribed work site and engage in work-related activities after they were logged-out and off the clock, in the interest of the employer.

108.    Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiffs and the similarly-situated employees.

109.    Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

110.    At all times relevant hereto, the action of Defendants to not pay overtime or premium pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay one and one-half times the regular rate for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

111.    As a direct and proximate result thereof, Plaintiff and similarly situated employees are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

112.    Plaintiff requests that the Court authorize notice to the members of the collective class to inform them of the pendency of this action and their right to "opt-in" to this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

113.     Plaintiff estimates there are at least one hundred (100) individuals who are similarly situated as defined above.  The precise number of collective class members can be ascertained by using Defendants' payroll and personnel records.

114.     Plaintiff and the FLSA Collective Class worked or work in excess of forty (40) hours during workweeks within the applicable statutory period.

115.     Defendants did not pay Plaintiff or the FLSA Collective overtime premiums for their overtime hours worked.

116.     Defendants willfully engaged in a pattern of violating the FLSA, 29 U.S.C. § 201 et seq., as described in this Complaint in ways including, but not limited to, failing to pay its employees overtime compensation.

117.     Defendants' conduct constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

118.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the similarly situated individuals. Accordingly, notice should be sent to the FLSA Collective Class members. There are numerous similarly situated current and former employees of Defendants who have suffered from Defendants' practice of denying overtime pay and who would benefit from the issuance of court-supervised notice of this lawsuit and the opportunity to join. Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

119.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

120.     Defendants operate an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce within the meaning of Section 3(s)(1)(A), 29

U.S.C. § 203(s)(1)(A).

121.     At all relevant times, Plaintiff has been entitled to the rights, benefits, and protections granted by the FLSA.

122.     Section 207(a)(1) of the FLSA states that an employer must pay its employees overtime equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 in any given workweek.

123.     By the above-alleged conduct, Defendants have violated the FLSA by failing to pay Plaintiff overtime compensation as required by the FLSA.

124.     Section 13 of the FLSA, 29 U.S.C. §213, exempts certain categories of employees from the overtime compensation requirements set forth in Section 207(a)(1) of the FLSA. However, none of the Section 13 exemptions apply to Plaintiff because he has not met the requirements for coverage under the exemptions.

125.     Defendants have acted willfully and have either known that their conduct violated the FLSA or have shown reckless disregard for the matter of whether their conduct violated the FLSA. Defendants have not acted in good faith with respect to the conduct alleged herein.

126.     As a result of Defendants' violations of the FLSA, Plaintiff has incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation.

**FOURTH CAUSE OF ACTION**
**Violation of the IMWL, 820 ILCS 105/1, *et seq.***

127.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

128.     Plaintiff brings claims on his own behalf and on behalf of the IMWL class defined

above, pursuant to the IMWL, 820 ILCS 105/1, *et seq.*, to recover unpaid wages, unpaid overtime compensation, unlawfully withheld wages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

129.    Section 105/4(a) of the IMWL requires employers to pay employees one and one- half times their regular rate for all hours worked over forty (40) per work week. Section 105/12 of the IMWL provides that employers who violate the provisions of the IMWL are liable to affected employees for unpaid wages, costs, attorneys' fees, damages of 2% of the amount of any such underpayment for each month following the date of underpayments, and other appropriate relief.

130.    Plaintiff is not subject to any exemption from the IMWL.

131.    Defendants failed to create or maintain accurate time records of the time Plaintiff worked, in violation of the IMWL, 820 ILCS § 105/8.

132.    As a result of Defendants' violations of the IMWL, Plaintiff has suffered a loss of income and other damages.

133.    As a result of the unlawful acts of Defendants, they are liable to Plaintiff for actual damages, statutory damages, and equitable relief, as well as reasonable attorneys' fees, costs, and expenses.

**FIFTH CAUSE OF ACTION**
**Violation of the City of Chicago Minimum Wage Ordinance,**
**Chapter 1-24, Section 1-24-020, *et seq.***

134.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

135.    Plaintiff brings claims on his own behalf and on behalf of the Ordinance Class pursuant to the Ordinance, Section 1-24-020, *et seq.*, to recover unpaid wages, unpaid overtime

compensation, unlawfully withheld wages, statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

136.    Pursuant to City of Chicago Minimum Wage Ordinance, Chapter 1-24, Section 1-24-020, for all time Plaintiffs worked for Defendants at their Chicago, Illinois location, they were entitled to be compensated at the applicable City of Chicago Minimum Wage.

137.    Defendants violated the City of Chicago Minimum Wage Ordinance by failing to compensate Plaintiffs at the then applicable City of Chicago Minimum Wage for all time worked in one or more individual workweeks.

138.    Plaintiffs were not paid an hourly wage for the work they performed on behalf of Defendants at their Chicago, Illinois location.

139.    Pursuant to City of Chicago Minimum Wage Ordinance, Chapter 1-24, Section 1-24-110, Plaintiffs are entitled to recover three times the amount of any underpayment, along with costs and reasonable attorneys' fees allowed by the court.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Larry Frisby respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiff Larry Frisby as Class Representative and appointing Jeffrey Grant Brown and Glen J. Dunn as Class Counsel;

B.    Certifying this case as a collective action on behalf of the collective defined above, appointing Plaintiff Larry Frisby as Class Representative and appointing Jeffrey Grant Brown and Glen J. Dunn as Counsel for the Collective;

C.    Declaring that Defendants' actions, as set forth above, violate BIPA;

D.    Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

E.     Declaring that Defendants' actions, as set forth above, constitute negligence;

F.     Declaring that Defendants' actions, as set forth above, were willful;

G.     Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including an Order requiring Defendants to collect, store, use and disseminate biometric identifiers and/or biometric information in compliance with BIPA;

H.     Declare and find that Defendants committed one or more of the following acts against Plaintiff and the certified collective/class:

   a.     Violated the provisions of the FLSA by failing to pay overtime wages to Plaintiff and the putative collective;

   b.     Violated the provisions of the IMWL by failing to pay overtime wages to Plaintiff and the putative class; and

   c.     Violated the provisions of the Ordinance by failing to pay overtime wages to Plaintiff and the putative class;

I.     Enjoining Defendants from violating the practices that this Court finds to be violative of the FLSA and/or the IMWL and/or the Ordinance;

J.     Awarding compensatory damages to Plaintiff individually, and to the certified collective and certified IMWL and Ordinance classes, including all overtime compensation owed, in an amount according to proof;

K.     Awarding liquidated damages on all unpaid wages due to Plaintiff, individually, under the FLSA;

L.     Awarding 2% per month interest on all unpaid wages due to Plaintiff individually and to the certified class under the IMWL accruing from the date such amounts were due until it is paid;

M.     Awarding treble damages on all unpaid wages due to Plaintiffs under the Ordinance;

N.     Awarding punitive damages to Plaintiff individually and to the collective and classes;

O.     Awarding Plaintiff and the Classes their reasonable attorneys' fees and costs and other litigation expenses pursuant to BIPA, the FLSA, the IMWL and the Ordinance;

P.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

allowable;

Q.      Providing such further relief as the Court deems just and equitable.

### JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

**Respectfully Submitted,**

*/s/ Jeffrey Grant Brown*
**JEFFREY GRANT BROWN**
Illinois Bar No. 6194262
jeff@JGBrownlaw.com

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
221 North LaSalle Street, Suite 1414
Chicago, IL 60601
Tel:  312.789.9700
Fax: 312.789.9702

**GLEN J. DUNN, JR.**
Illinois Bar No. 6274852
 GDunn@GJDlaw.com

Glen J. Dunn & Associates, Ltd.
221 North LaSalle Street, Suite 1414
Chicago, IL  60601
Tel:  312.546.5056
Fax: 312.546.