IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LARRY FRISBY, on behalf of himself
and all others similarly situated,

                Plaintiffs,

-v.-

SKY CHEFS, INC. and LSG GROUP,

                Defendants.

Civil Action No. 19 C 0798

Judge Kennelly

Magistrate Judge Cole

**PLAINTIFFS' RESPONSE TO
DEFENDANTS SKY CHEFS, INC. AND LSG GROUP'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Introduction

    Plaintiffs' Complaint alleges two types of claims: wage and hour violations of the FLSA, Illinois Minimum Wage Law and Chicago Ordinance, for failure to properly compensate for time worked; and Illinois Biometrics Privacy Act ("BIPA") privacy violations. Plaintiff Frisby does not claim, as Defendants say, "that he was not adequately compensated for his data", Defts' Mem., p. 8.

    Defendants supply food to airplane passengers. Complaint, ¶¶ 1, 4. In their motion, they claim they are as exempt *as an airline* from liability under BIPA because of the supposed subject matter jurisdiction of this matter under the Railway Labor Act[1]. They make that claim based on the Seventh Circuit's holding in *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 903 (7th Cir. 2019). But *Miller* merely confirmed that, "As a matter of federal law, unions in the air transportation business are the workers' exclusive bargaining agents. 45 U.S.C. §152." Defendants here are not in the air transportation

---

[1] Nowhere have Defendants claimed preemption under the Labor Management Relations Act in their motion.

business. They supply food to airlines. They are no more in the air transportation business than myriad other businesses whose members belong to the same UNITE HERE union that Defendants reference in their response, Defts' Mem., Ex. 1, and "who work in the hotel, gaming, food service, airport, textile, manufacturing, distribution, (and) laundry… industries." https://unitehere.org

Defendants cannot meet their high burden of establishing, as an affirmative defense, that they are exempt from the FLSA pursuant to the RLA. Sky Chefs is not an employer subject to the federal Railway Labor Act ("RLA"), as Defendants claim. Because they are not subject to the RLA, the asserted defense that the RLA "preempts" Plaintiffs' BIPA claim fails.

Defendants also claim the Complaint does not raise any wage and hour violations. That claim is unfounded and wrong. The Complaint specifically alleges that Plaintiff Frisby worked at least forty hours per week for Defendants, Complaint, ¶ 29; that no time clocked in by Plaintiff or other similarly situated employees prior to the start time of the scheduled shift was compensated by Defendants, though the employees performed compensable work during that time, Complaint, ¶ 47; that the rounding of their clocked time "was typically to the detriment of the employee, and to the benefit of Defendants", *id.*, ¶ 48; and that they were required to work through their designated meal break virtually every day without compensation, *id.*, ¶ 49. While Defendants may choose to dispute those factual allegations in an Answer and at trial, the allegations themselves are sufficient to raise a legally cognizable claim under the three wage statutes. Defendants' motion must therefore be denied.

I.         DEFENDANTS CANNOT ESTABLISH THAT SUBJECT MATTER JURISDICTION EXISTS UNDER THE RLA.

Defendants agree that the question of Railway Labor Act jurisdiction is a matter of subject matter jurisdiction. Defts' Mem., p. 4. There are no facts of record here whatsoever to support any claim by Defendants that such jurisdiction can be or has been met by Defendants.

The National Mediation Board ("NMB") is the federal agency responsible for administering

the RLA. The NMB has developed a "function-and-control test" to determine whether an entity is subject to the RLA, and lower courts have treated NMB analyses of the test as persuasive (though courts are not bound by the determinations made by the NMB under this test, *Roca v. Alphatech Aviation Servs.*, 960 F. Supp. 2d 1368, 1372 (S.D. Fla. 2013). Under the NMB's two-pronged conjunctive test, an employee is covered by the air-carrier exemption to the FLSA if: (1) the nature of the work is that traditionally performed by employees of air carriers (the "function" test); **and** (2) the employer is directly or indirectly owned or controlled by or under common control with an air carrier (the "control" test). *Verrett v. The Sabre Grp.*, 70 F. Supp. 2d 1277, 1281 (N.D. Okla. 1999). Both prongs must be satisfied in order for the RLA exemption to apply.

"[W]hen considering whether the nature of the work is traditionally performed by employees of rail or air carriers[,]" the NMB "looks to the [RLA's] purposes." *In Re AMR Servs. Corp.*, 18 NMB 348, 350 (May 2, 1991). Because one of the RLA's stated purposes is to "avoid any interruption to commerce or to the operation of any carrier engaged therein," 45 U.S.C. § 151a, the analysis under the first prong also examines "whether the carrier affiliate's services are sufficiently connected to the carrier's commercial transportation operations that a work stoppage at the carrier affiliate would impede those operations." *Cunningham v. Elec. Data Sys. Corp., 2010 U.S. Dist. LEXIS 32112 (S.D.N.Y. Mar. 30, 2010)* at *5. In other words, the function test considers whether the work at issue is traditionally performed by employees of air carriers and also whether the work is essential to a carrier's air transportation services. See *Verrett v. Sabre Grp., Inc.*, 70 F. Supp. 2d 1277, 1283 (N.D. Okla. 1999); see also I*n re Norwegian Cabin Crew Assoc*, 43 NMB 97, 105 (April 19, 2016) (holding that the function test is satisfied where "[t]he duties of flight attendants are essential to air transportation services and have been long held to be services traditionally performed by carrier employees"); *Venegas v. Glob. Aircraft Serv.*, No. 2:14-cv-249-NT, 2016 U.S. Dist. LEXIS 130164, at *21 (D. Me. Sep. 23, 2016).

Here, Defendants provide food to airline passengers. Complaint, ¶¶ 1, 4. Such provision

cannot be considered "essential" to the business of an air carrier. Indeed, much as we might detest airplane food, we can fly on an airplane without it, and have done so many times. Likewise, there are no facts of record establishing that the provision of food to an airplane's passengers (or even crew) is work that is either "traditionally performed by employees of air carriers" or "essential".

In *Roca v. Alphatech Aviation Servs., 9*60 F. Supp. 2d 1368, 1373 (S.D. Fla. 2013), the district court applied the NMB's "function and control" test and found that the plaintiff, whose work involved heavy-duty cleaning of airplanes operated by commercial and freight airlines, was not subject to the RLA. The employer had moved for summary judgment on the question of whether Plaintiff is an "employee of a carrier by air" for purposes of the FLSA's air carrier exemption. The Court noted that "The application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof. *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974)", and concluded that, under the NMB's two-part test, Defendants had not shown that the work performed by Plaintiffs "is of the sort traditionally performed by air-carrier employees." *Roca*, at 1372.. In fact, the Court held: "Defendants have not presented any evidence tending to show that the work performed by Alphatech is ever performed by air-carrier employees, let alone that it is "traditionally" performed by those workers." *Id.,* at 1373. The Court noted the RLA's definition of a "carrier" includes actual carriers as well as "any company . . . which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation, receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, and handling of property transported.", 45 U.S.C. § 151, and noted that the Act's definitional focus tends to be on companies performing the auxiliary functions of "loading, unloading, and shipping to and from carriers' depots and terminals for the ultimate transportation of whatever is being carried in interstate commerce." *Roca*, 1372-73. The Court observed that "Alphatech's owner, by contrast, acknowledges that the work performed by Alphatech is traditionally *contracted out* by the air carriers." (*Emphasis supplied.*) *Id*

Dobbs Houses, a Tennessee corporation engaged in the restaurant and airline catering

business at numerous airports throughout the country, made the same argument Defendants make here, that they are governed by the Railway Labor Act, in *Dobbs Houses, Inc. v. NLRB,* 443 F.2d 1066, 1067 (6th Cir. 1971). The basic issue in the case was whether or not Dobbs Houses was subject to the jurisdiction of the Railway Labor Act. The Sixth Circuit held it was not, and noted:

> "(T)he Employer did not concede that the Board had jurisdiction and, instead, moved that the petition be dismissed on the ground that the Employer and the catering employees sought by the petition are subject to the jurisdiction of the Railway Labor Act…. The Petitioner disagrees….
>
> "The Employer's Memphis catering operations involve the preparation of food in its airport kitchens and the transportation of food and beverages from its facilities at the airport to planes and the return of soiled equipment to its kitchens which are located at the airport…. The Employer's relations with the airlines are established by oral contracts and detailed specifications or manuals, which set forth in detail instructions regarding the catering operation as it relates to the particular airline. These instructions include the make up of menus, the manner of food and beverage preparations, the size of meals and the manner and means by which the food should be loaded on the planes…. While we recognize that Dobbs Houses is engaged in a business which requires it to please some very meticulous and demanding customers, that fact alone does not establish their "control directly or indirectly" of it or its employees for purposes of the Railway Labor Act.

*Dobbs Houses, Inc. v. NLRB*, 443 F.2d 1066, 1072 (6th Cir. 1971). The Court thus concluded there was no RLA jurisdiction over the matter.

There are no facts of record here that the Sky Chefs Defendants' relationship with its airline customers are any different. There is no evidence that Plaintiffs' work is that traditionally performed by employees of air carriers. Defendants have not produced a scrap of evidence suggesting - nor have Defendants even alleged - that any airline is the true employer of Plaintiff and the class he seeks

to represent. Instead, the opposite is true: Defendants assert in their Memorandum that there exists a collective bargaining agreement between a union which Plaintiff is allegedly required to join, and Defendant Sky Chefs, Inc.; and that Sky Chefs - not some airline entity - has "sole jurisdiction of the management and operation of its business and the direction of its working force." See, Defts.' Mem., p. 3. Thus, unlike the argument in *Dobbs Houses*, there is not even a suggestion that any airline controls or owns Defendants here.

Defendants appear to be either conflating or leap-frogging over the failure of RLA applicability, repeating that the *Miller* decision requires arbitration, with this quote from *Miller:*

"It is not possible even in principle to litigate a dispute *about how an air carrier* acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Id.* at 904. Thus, it determined, "this dispute must go to an adjustment board." *Id.*" Defts' Mem., p. 7. But Defendants here are not an "air carrier". There is no "adjustment board" for Plaintiffs' claims here. "Adjustment Boards" are for RLA claims. There is no jurisdiction of the RLA over Plaintiffs' claims because Defendants are not subject to the RLA. As an aside, and as set forth below, the CBA Defendants have appended to their motion makes no mention of whether a union consented to using biometric information, nor how Defendants have acquired and used that information, such that the directive in *Miller* is wholly inapplicable here. Because Defendants are not subject to the RLA, there is no subject matter jurisdiction of an RLA dispute, and no adjustment board to address a claim.

The Parties Cannot Create RLA Jurisdiction.

Defendants may counter that the Collective Bargaining Agreement they have attached to their motion to dismiss reflects Defendants' and the UNITE HERE union's agreement to proceed under the RLA. But of course, the parties cannot create federal jurisdiction by consent. *Insurance Corp of Ireland, Ltd. v. Compaignie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) ("[N]o action of the parties can confer subject matter jurisdiction upon a federal court. Thus,

the consent of the parties is irrelevant."); *Shapo v. Engle*, No. 98 C 7909, 2008 U.S. Dist. LEXIS 21075, at *9 (N.D. Ill. Mar. 14, 2008) "a district court's lack of subject matter jurisdiction cannot be cured by agreement of the parties; see also, *Metropolitan Life Insurance Co. v. Estate of Cammon,* 929 F.2d 1220, 1222- 1223 (7th Cir. 1991); *Renneisen v. Am. Airlines, Inc.*, 990 F.2d 918, 922 (7th Cir. 1993). Instead, there has to actually be RLA jurisdiction, and there is none here, because Defendants are not a "carrier" under the RLA.

Defendants Cannot Meet Their Burden Of Proving An FLSA Exemption.

The FLSA provides, at 29 U.S.C. 213:

(b) Maximum hour requirements. The provisions of section 7 [29 USCS § 207] shall not apply with respect to—…

(3) any employee of a carrier by air subject to the provisions of title II of the Railway Labor Act [45 USCS §§ 181–188]; …

29 USCS § 213.

The application of an exemption under the FLSA is an affirmative defense on which the employer has the burden of proof. *Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974).* The exemptions are narrowly construed, and the burden is on the employer to demonstrate that the employee is covered by one of the exemptions. *Raimondi v. Central Dupage Hospital*, No. 15 C 7780, 2017 U.S. Dist. LEXIS 47499, at *8 (N.D. Ill. Mar. 30, 2017). The Railway Labor Act applies to railways and to airlines. It does so because a railway or airline "carrier" is a term defined under the RLA. Southwest Airlines, and United Airlines (also a party in the consolidated *Miller* decision) are airlines, subject to the RLA. Defendants are not.

Again, there exists no evidence of record that Defendants are an RLA "carrier". Without that status, it cannot follow that the RLA exemption to the FLSA Defendants seek has any application here.

BIPA Is a Subject Independent of the CBA That Defendants Argue Controls This Matter.

As the *Miller* decision recognized, "When a subject independent of collective bargaining arises, and concerns different treatment of different workers, litigation may proceed outside the scope of the Railway Labor Act." *Miller*, 926 F.3d at 904. Even if the RLA somehow did apply here (which we do not by any means concede), Defendants' motion does not address settled law in this Circuit that ""a state-law cause of action is not pre-empted … if it involves rights and obligations that exist independent of the collective bargaining agreement…" *Westbrook v. Sky Chefs*, 35 F.3d 316, 318 (7th Cir. 1994). In *Westbrook*, Plaintiff injured herself at work - while working for Defendant Sky Chefs [2] - and was subsequently terminated from her employment. The District Court held she was required to arbitrate her claim for retaliatory discharge. The Seventh Circuit reversed, finding she had a legal claim independent of any CBA between her union and Sky Chefs - the state statutory right provided under the Illinois Workers' Compensation law against retaliatory discharge. The Court, citing Supreme Court precedent, held:

> "(I)n this case, the CBA is not the 'only source' of plaintiff's right not to be discharged wrongfully….. (I)n fact the 'only source' of the right respondent asserts in this action is state law. In both this case and *Hawaiian Airlines*, the plaintiff alleged violation of state law independent of the CBA, and the defendant's obligation under the RLA to arbitrate disputes arising out of the application or interpretation of the CBA did not relieve them of this duty. The Court states the preemption standard thus emerges in this way: a state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective bargaining agreement."
>
> *Westbrook v. Sky Chefs*, 35 F.3d 316, 318 (7th Cir. 1994)(internal quotations and citations omitted).

---

[2] In *Westbrook*, application of the RLA was not at issue. The 1994 *Westbrook* decision references a 1988 NMB advisory opinion that Sky Chefs was subject to the RLA; however, at that time, Sky Chefs was a wholly-owned subsidiary of an airline. See, https://www.lsgskychefs.com/about-us/#null ("American in origin, Sky Chefs was founded by American Airlines in Texas in 1942, making it the oldest independent caterer in the world." It is no longer owned by an airline, according to Ex. 1 to Defts' Mem, p. 3, and in any event, there is no record evidence otherwise.

Likewise, here, any CBA Defendants proffer is not the 'only source" of Plaintiff's right to privacy as articulated by BIPA. It is not a source at all. Indeed, we find no provision within the pages of the CBA that Defendants have attached to their motion that remotely addresses in any manner, shape or form Defendants' right to use Plaintiffs' private biometric information, or their waiver of any such right. Plainly, the word "biometrics" appears nowhere in the document. But neither does "privacy", "fingerprint", "retinal scan", or "time keeping", or even "time clock". The entire section of the CBA relating to "Fringe Benefits and General Conditions of Employment", Defts' Mem., Ex. 1, p. 19 makes no mention of any concept relevant to or covered by any of those concepts or by the BIPA. Nothing else in the CBA does, either. Plaintiffs' rights to privacy as enshrined in BIPA exist independent of the CBA that Defendants have attached to their memorandum. This is not a "minor dispute" in which a "plaintiff's claims… depend not only on a right found in the CBAs, but also… implicate practices, procedures, implied authority, or codes of conduct that are part of the working relationship.", see *Monroe v. Mo. Pac. R.R.*, 115 F.3d 514, 518 (7th Cir. 1997) *quoting* F*ry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir. 1996). There simply are no rights to the privacy created by BIPA or arising under any other basis, under any provision of the CBA proffered by Defendants. *See*, H*awaiian Airlines v. Norris,* 512 U.S. 246, 254, 114 S. Ct. 2239, 2245 (1994) *citing* NRAB Third Div. Award No. 19790 (1973) ("This Board lacks jurisdiction to enforce rights created by State or Federal Statutes and is limited to questions arising out of interpretations and application of Railway Labor Agreements"). To claim that the CBA Defendants present without elucidation should govern Plaintiffs' BIPA claims is entirely inconsistent with the facts and holding in *Miller* and the established law of *Westbrook, Norris,* and its progeny.

Moreover, Plaintiffs fully intend to explore in discovery the use, storage or retention of Plaintiffs' biometrics information by third party vendors, including Kronos (*see*, Complaint, ¶ 20). Defendants do not explain how the liability of a third party for its and their BIPA violations could be addressed through a System Board of Adjustment and Arbitration proceeding, to which the third

party (parties) are not parties.

> RLA preemption is supposed to work like this:
>
> "It is the "general rule that the RLA will not bar a plaintiff from bringing a claim under an independent federal statute in court (because such claims are generally independent of the CBA and will be adjudicated under non-CBA standards)." *Brown( v. Ill. Cent. R.R.),* 254 F.3d at 667-68. But if the plaintiff's lawsuit can be dispositively resolved by interpreting the CBA, then the case must be dismissed in favor of the RLA's exclusive and mandatory dispute resolution procedures. *Hawaiian Airlines*, 512 U.S. at 261-62; *Brown*, 254 F.3d at 668. On the other hand, there is no preclusion if the CBA is relevant to the dispute but not dispositive, *Brown*, 254 F.3d at 664, or if a plaintiff's claim merely tangentially touches a CBA. *Monroe*, 115 F.3d at 519. In short, the plaintiff's claim is not precluded unless the parties disagree about the interpretation of the CBA <u>and</u> that dispute is dispositive of the plaintiff's claim. *Brown*, 254 F.3d at 664 (citing *Loewen Group International, Inc. v. Haberichter*, 65 F.3d 1417, 1423 (7th Cir. 1995))."

*Tice v. Am. Airlines, Inc.*, Case No. 95 C 6890, 2001 U.S. Dist. LEXIS 13941, at *5-6 (N.D. Ill. Aug. 29, 2001)(*emphasis supplied*). As discussed, there is no RLA application here in the first place. Moreover, Defendants haven't even suggested what part of the CBA would "govern" or need to be "interpreted", to support, rebut or address any claim that Defendants' collecting, capturing, purchasing, receiving through trade, or otherwise obtaining Plaintiffs' biometric data is legal, accepted or agreed upon. The dispute must be one that involves interpretation of the CBA to not be precluded, *Tice* at *9. It is obvious that Plaintiffs' claims for privacy protection here arise solely from an independent state law cause of action based upon the facts of this case; and the CBA Defendants have produced has no application to the privacy claims at issue, such that there could be no preclusion even if the RLA did somehow apply here.

<u>Plaintiff's Claim for Negligence Stands Apart From his BIPA Claims.</u>

Invasion of privacy lawsuits are nothing new; at common law, violations of the right to privacy

have been recognized as a valid basis for suit. See *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 488, 95 S. Ct. 1029, 43 L. Ed. 2d 328 (1975); *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983 (9th Cir. 2017); *Dixon v. Wash. & Jane Smith Cmty.*, No. 17 C 8033, 2018 U.S. Dist. LEXIS 90344, at *28 (N.D. Ill. May 31, 2018). Obtaining or disclosing a person's biometric identifiers or information without her consent or knowledge necessarily violates that person's right to privacy in her biometric information. *Id.*

Defendants' only criticism of Plaintiffs' claim for negligence is that it "necessarily requires interpretation of the CBA." Defts' Mem., p. 10. There is again no suggestion of what provision(s) of the CBA would need to be interpreted, nor why it would be necessary- elements that are Defendants' burden of proof in attempting to preclude litigation over the privacy issues at hand. For all of the reasons set forth above, this argument fails, too.

II.     PLAINTIFF'S COMPLAINT SETS FORTH ALL ELEMENTS OF HIS WAGE CLAIMS

Defendants have also argued that Plaintiffs' wage claims must be dismissed. It would appear that Defendants' argument regarding Plaintiffs' wage claims has been brought simply because Defendants felt compelled to bring a motion to dismiss Plaintiffs' BIPA claims in the wake of the *Miller* decision, and then decided to throw on an extra argument. Defendants' argument is not well founded.

Defendants begin by arguing that "courts of this district have generally agreed that a plaintiff must plead details beyond having worked more than 40 hours without overtime to state a claim under the FLSA." Defts' Mem., p. 11. We do not disagree; but have plead vastly more detail than that, as even a cursory read of the Complaint reveals. As noted, Plaintiff has pleaded that Plaintiff typically clocked in five to six minute early, because his employers required it, Complaint, ¶¶ 45-46; that that time was not compensated, *id.*, ¶ 47; that instead that time was rounded down to the detriment of Plaintiff, *id.*, ¶ 48; that he and others were required to work through their meal break virtually every day without compensation, *id.*, ¶ 49; and that he worked in excess of 100 hours of unpaid overtime,

*id.*, ¶ 53. There is no legitimate argument that those allegations are insufficient to state a cause of action for violations of the FLSA, IMWL or the City Ordinance.

Defendants claim our "rounding" allegations should be dismissed "because they fail to raise a *reasonable expectation* that discovery will reveal any overtime violations….". Defts' Mem., p. 10 (emphasis supplied). But they support that unsupported factual claim with nothing. Each of the cases cited by Defendants following that claim pertain to Complaints that failed to plead more than that overtime was worked without pay. That is not the case with this Complaint.

Defendants refer to the Code of Federal Regulations regarding rounding, 29 C.F.R. 785.48(b), to defend their time rounding practices. They ignore, however, that same regulations' prohibition, that rounding is impermissible if it is not neutral, or, as we have pleaded, "such rounding was typically to the detriment of the employee, and to the benefit of Defendants", Complaint, ¶ 48. In other words, they appear to assert legal argument as facts directly opposed to well-pleaded facts in our Complaint, that Plaintiff typically clocked in five to six minute early, because his employers required it[3], Complaint, ¶¶ 45-46, and that time was rounded away, ¶ 48, to attempt defeat the Complaint in a motion to dismiss. That is impermissible, since the Court takes as true the Complaint's well pleaded facts, drawing reasonable inferences in the plaintiff's favor. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Plaintiffs have pleaded the "systematic underpayment of wages" that Defendants' cited legal precedent[4] requires.

Plaintiff Frisby has also alleged that he worked through his meal periods, but was not

---

[3] Since Plaintiff's employer *required* his attendance pre-shift, Complaint, ¶ 46, and it was not voluntary, then regardless of whether he actually worked during that time, he was "engaged to wait", and such time is therefore compensable under the FLSA. See, *Roland v. Unity Ltd. Partnership*, No. 07-C-1103, 2010 U.S. Dist. LEXIS 29623, at *7 (E.D. Wis. Mar. 29, 2010(("An employee is engaged to wait when idle waiting is a part of the job he is asked to work."); see also, 29 CFR 785.15 ("… the employee is unable to use the time effectively for his own purposes. It belongs to and is controlled by the employer. In all of these cases waiting is an integral part of the job. The employee is engaged to wait").

[4] M*endez v. H.J. Heinz Co., L.P.*, No. CV 12-5652-GHK (DTBx), 2012 WL 12888526, at *3 (C.D. Cal. Nov. 13, 2012)("[T]o survive a motion to dismiss, Plaintiff must not only allege what the rounding policy is, but also additional facts that would plausibly suggest that the policy results in a systematic underpayment of wages."). Defts' Mem., p. 12.

compensated for that time. Complaint, ¶ 49. Defendants acknowledge as much, but suggest that it should take more than a paragraph of pleading to make such an allegations stick ("Plaintiff also alleges, in a single paragraph, that he and other unidentified employees worked through their designated meal break virtually every day, and that their time was not compensated. *Id.* ¶ 49.") After reciting that the wage laws require such time to be compensated ("The FLSA, IMWL, and CMWO, however, do not demand lunch breaks, but rather *prescribe* only *that an employee must be paid for every hour worked.*", Defts' Mem., p. 14, emphasis supplied), Defendants conclude that such conduct is not unlawful because Plaintiff must plead that "any allegedly missed meal break was otherwise unpaid." *Id.* It is an incomprehensible argument. Plaintiff is not suing because he missed lunch; he is suing because he worked through the meal period without pay. Plaintiff has alleged he worked through his meal break but was unpaid. Plaintiffs' allegations are short and plain, as required by Rule 8. They nonetheless set forth a legal claim for violations of the asserted wage laws.

To conclude their arguments, Defendants establish the extremely punctilious and persnickety nature of their defenses to this litigation: They assert that, because Plaintiff Frisby has failed to allege that two or more of the hours he worked each week were "within the geographic boundaries of the City of Chicago", *id.*, p. 15, his claims under the Chicago Minimum Wage Ordinance must be dismissed. We submit such a matter is an "avoidance", *e.g.*, an affirmative defense under Rule 8(c)(1), rather than an element of his cause of action, and Defendants can attempt to demonstrate as a fact later on that the number of hours Plaintiff and his co-workers worked within the geographic boundaries of the City of Chicago was less than two per week. Plaintiffs need not provide detailed factual allegations in their Complaint, but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim must be facially plausible, meaning that the pleadings must "allow...the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The claim must be

described "in sufficient detail to give the defendant 'fair notice of what the...claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Plaintiff's Complaint does that.

But, fortunately, Defendants have also established that fact themselves in attaching to their motion a collective bargaining agreement they say governs this matter, reflecting that "Sky Chefs Units Covered by the Master National Agreement" include "Chicago, Illinois", *id.* p. 38. Plaintiff must, therefore, have been working in Chicago, Illinois, according to Defendants. Of course, the Court may also take judicial notice of the fact that Chicago's O'Hare Airport is located within the geographic boundaries of the City of Chicago when reviewing paragraph 100 of the Complaint, which alleges:

"Plaintiff and the putative class members are hourly-paid, non-exempt, full-time employees whom Defendants employed at O'Hare International Airport during the Class Period and whose daily log- in and log-out time was rounded and/or unpaid as described above." (*Emphasis supplied*.)

Conclusion

Defendants could not rightfully oppose a motion for summary judgment based on the facts of this matter, at least as the only facts before the Court - the ones in the Complaint - are set forth. For all of the reasons set forth above, Defendants' motion should be denied in its entirety; and Defendants should be ordered to Answer the Complaint at once.

Date: May 15, 2020

        **Respectfully Submitted,**
        **LARRY FRISBY,**
        **Individually and on Behalf of**
        **All Others Similarly Situated.**

        By: /s/ Jeffrey Grant Brown
            Jeffrey Grant Brown
            One of Plaintiffs' attorneys

| | |
|---|---|
| Jeffrey Grant Brown | Glen J. Dunn, Jr. |
| Jeffrey Grant Brown, P.C. | Glen J. Dunn & Associates, Ltd. |
| 221 North LaSalle Street, Suite 1414 | 121 West Wacker Drive, Suite 1414 |
| Chicago, IL 60601 | Chicago, IL 60601 |
| 312.789.9700 | 312.880.1010 |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of Plaintiffs' Response To Defendants Sky Chefs, Inc. and LSG Group's Motion To Dismiss Plaintiffs' Complaint was served electronically through the ECF System of the Clerk of Court for the United States District Court for the Northern District of Illinois, and served upon all persons who have appeared therein, this 15th day of May, 2020.

/s/ Jeffrey Grant Brown
Jeffrey Grant Brown