IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY FRISBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 19 C 7989 |
| ) | |
| SKY CHEFS, INC. and LSG GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Larry Frisby, on behalf of himself and others similarly situated, has sued his former employer, an airline catering business, along with the company that owns it. Frisby has asserted claims of negligence and violation of the Illinois Biometrics Privacy Information Act (BIPA), both based on his former employer's acquisition and use of employees' fingerprints for timekeeping. Additionally, Frisby has sued under various labor laws for unpaid overtime wages. The defendants have moved to dismiss all of these claims.

### Background

LSG Group LLC owns several companies in the travel industry. One of its companies, Sky Chefs, Inc., provides catering services to airlines.

Sky Chefs collects employees' fingerprints at time of hire, and its hourly employees must clock in and out of their shifts via fingerprint scans. A third-party vendor administers this fingerprint-based time tracking, and Sky Chefs therefore shares

its employees' fingerprint data with this vendor.

Sky Chefs requires its employees to clock in five to six minutes before the start time of their shifts, and it disciplines those who fail to do so. Frisby alleges that despite this policy, Sky Chefs does not compensate its employees for this mandatory pre-shift time or for any post-shift work. Instead, Sky Chefs typically rounds the time for which it compensates employees to their scheduled shift times.

From November 2015 through March 2019, Frisby worked as a driver for Sky Chefs at O'Hare International Airport. He was paid by Sky Chefs on an hourly basis. Frisby regularly clocked in five to six minutes before start of his shift time, consistent with Sky Chefs' policy described earlier, and he typically worked fifty to fifty-five hours per week. During his employment, Frisby alleges, he worked more than 100 hours of overtime for which Sky Chefs never compensated him.

Frisby has filed this suit on behalf of himself and other similarly situated Sky Chefs employees, asserting claims of negligence and violation of BIPA and several labor laws by Sky Chefs and the LSG Group. The defendants have moved to dismiss all of the claims in Frisby's complaint, and the Court held a hearing on the motion.

## Discussion

### A. Claims based on acquisition and handling of fingerprint data

BIPA regulates private entities' acquisition and management of biometric information, which includes fingerprints. 740 ILCS 14/10, 15. Before acquiring an individual's fingerprints, a "private entity" must inform the individual or his "legally authorized representative," in writing, about the purpose of acquisition, how the data will be stored, and how long the entity plans to keep it. 740 ILCS 14/15(b). The private

entity may acquire a person's fingerprints only if it has received written consent from the person or his legally authorized representative. *Id.* BIPA also requires consent for disclosure or "other[] disseminat[ion]" of an individual's fingerprints. *Id.* 15(d). Finally, a public entity that obtains biometric information must publicly issue protocols for retention and destruction of biometric information once its purpose has been satisfied. *Id.* 15(a).

In count 1, Frisby has alleged that Sky Chefs violated BIPA because it failed to provide the required disclosures prior to obtaining his fingerprints; it never received written consent to acquire the prints or share them with the third-party timekeeping vendor; and it never published protocols for retention and destruction of employee fingerprints. Count 2, a common law negligence claim, is largely based on the same conduct: Frisby alleges that the defendants breached their duty of reasonable care by obtaining and using employee fingerprints without complying with the procedural safeguards set forth in BIPA.

The defendants have moved to dismiss counts 1 and 2 under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that they are preempted by the federal Railway Labor Act (RLA). "A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). The plaintiff's well-pleaded factual allegations must "plausibly suggest a claim of subject matter jurisdiction." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). When a party contends that the pleadings are formally sufficient but that "there is *in fact* no subject matter jurisdiction," a court may review "any evidence submitted to determine if subject

matter jurisdiction exists." *Id.* at 173.

The RLA, which applies to "common carrier[s] by air," 45 U.S.C. § 181, requires that any dispute regarding the interpretation or application of a collective bargaining agreement—called a "minor dispute"—go to an adjustment board, not a court. *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 900 (7th Cir. 2019). The Seventh Circuit ruled in *Miller* that the RLA preempted airline employees' BIPA claims based on the airline's failure to obtain consent and provide required disclosures before using employee fingerprints for timekeeping via a third-party vendor. *Id.* at 904. The court explained that, "[a]s a matter of federal law, unions in the air transportation business are the workers' exclusive bargaining agents," and "how workers clock in and out" is "a mandatory subject of bargaining." *Id.* at 903 (citing 45 U.S.C. § 152). The employees' union was their "legally authorized representative" for the purpose of determining whether they had received the disclosures and given the consent required under BIPA for the use of their fingerprints for timekeeping. *Id.* at 903. The court explained: "It is not possible even in principle to litigate a dispute about how an air carrier acquires and uses fingerprint information for its whole workforce without asking whether the union has consented on the employees' collective behalf." *Id.* at 904. Thus, the employees' BIPA claim was preempted by the RLA, which directs such disputes to an adjustment board. *Id.*

The defendants point out that while working for Sky Chefs, Frisby was a member of the Unite Here International Union, and his employment was subject to a collective bargaining agreement (CBA) between Sky Chefs and the union. Frisby's BIPA and negligence claims are based on allegations almost identical to those of the union airline employees in *Miller*, and thus, the defendants argue, Frisby's claims are likewise

4

preempted by the RLA. Frisby does not dispute that his employment with Sky Chefs was governed by the CBA. He argues, however, that his claims are not preempted because Sky Chefs is a catering business and does not meet the definition of "common carrier by air" under the RLA. This argument lacks merit.

The RLA does not define "common carrier by air," and the Seventh Circuit has not yet interpreted this language. Federal courts that have considered the issue apply a test similar to that set forth by the National Mediation Board (NMB), the agency that administers the RLA. *See, e.g.*, *Allied Aviation Serv. Co. of N.J. v. NLRB*, 854 F.3d 55, 61 (D.C. Cir. 2017); *Thibodeaux v. Exec. Jet Int'l, Inc.*, 328 F.3d 742, 750 (5th Cir. 2003) (Fifth Circuit's test "does not materially differ" from the NMB's test). The NMB's "function and control test" has two elements: "(1) whether the nature of the work is that traditionally performed by employees of rail or air carriers, and (2) whether the employer is directly or indirectly owned or controlled by, or under common control with a carrier or carriers." *Allied Aviation Serv.*, 854 F.3d at 61 (quoting *Signature Flight Support of Nev.*, 30 N.M.B. 392, 399 (2003)). If the both the function and control elements are met, then the entity qualifies as a carrier under the RLA. *See Signature Flight Support*, 30 N.M.B. at 399. The parties do not dispute that the function-and-control test should apply.

Frisby argues that the control element of the test is not satisfied because the defendants' operations are not under the control or ownership of any airline. But this contention is unsupported by the evidence submitted by the defendants, which shows that they are owned in full by Deutsche Lufthansa AG, an air carrier. *See Silha*, 807 F.3d at 173 (permissible for court to consider "any evidence submitted" on factual

5

challenge to subject matter jurisdiction). Thus, the control element is met.

As to the function element, Frisby argues that the defendants are food suppliers, and food supply is not a function traditionally performed by air carriers. The defendants explained at oral argument, however, that Sky Chefs is not simply a food supplier; rather, it performs "catering," which includes preparation of food that airlines serve to their passengers during flight. Preparation of food for in-flight service to airline passengers, according to the defendants, is a traditional function of air carriers.

The Court agrees. As the defendants point out, the NMB has consistently concluded that catering food for in-flight service is a function traditionally performed by air carriers.[1] *See, e.g.*, *Dobbs Int'l Servs.*, 34 N.M.B. 97, 108 (2007); *LSG Sky Chefs, Inc.*, 27 N.M.B. 55, 62 (1999); *Sky Chefs, Inc.*, 15 N.M.B. 397, 403 (1988). In 1988, the NMB issued an opinion letter, after a hearing at which both Sky Chefs and its employees' union presented evidence, in which it concluded that Sky Chefs' business of "provision of inflight food and beverage catering services" to airlines was a traditional function of air carriers. *Sky Chefs, Inc.*, 15 N.M.B. at 397, 403. The NMB explained that Sky Chefs was originally established as a subsidiary of American Airlines, and thus "[f]or over forty years [its] operations were conducted as part of American Airlines." *Id.* at 402-03. Additionally, the NMB noted that, at the time of its opinion letter, several other airlines employed personnel to perform the food service functions offered by Sky Chefs. *Id.* at 403.

Frisby has not presented any evidence tending to show that Sky Chefs' business

---

[1] The defendants note, correctly, that the NMB's opinion letters may be considered but are not binding on the Court. *See Mendoza v. Sessions*, 891 F.3d 672, 676 (7th Cir. 2018).

6

has changed since the 1988 NMB opinion letter such that it no longer satisfies the function element. Nor does Frisby point to any authority or other evidentiary support for his position that Sky Chefs' business of catering food for in-flight service is not a function traditionally performed by air carriers. He analogizes to *Dobbs Houses, Inc. v. NLRB*, 443 F.2d 1066 (6th Cir. 1971), in which the Sixth Circuit ruled that an airline catering company was not a carrier subject to the RLA. *Id.* at 1072. But the court in *Dobbs Houses* did not analyze whether catering was a traditional function of air carriers; instead, it concluded that the catering company was not a carrier under the RLA because, at the time, it was not under the direct or indirect ownership or control of an air carrier. *Id.* at 1072.

In sum, Sky Chefs satisfies both elements of the NMB's function-and-control test. This conclusion is consistent with the position of Frisby's union. The CBA between the union and Sky Chefs states that the agreement was "made . . . in accordance with the provisions of the Railway Labor Act" and that the parties "agreed to use voluntary efforts to achieve industrial stability under the structure provided by the Railway Labor Act." Defs.' Mem. of Law in Supp. of Mot. to Dismiss, Ex. 1, at 3.

Frisby argues that even if the defendants are subject to the RLA, the statute does not preempt his BIPA and negligence claims because the claims involve rights independent of the CBA. In support of this argument, Frisby relies on *Westbrook v. Sky Chefs,* 35 F.3d 316 (7th Cir. 1994), in which the Seventh Circuit held that an individual employee's state retaliatory discharge claim was not preempted by the RLA because it involved "rights and obligations that exist independent of the collective bargaining agreement." *See id.* at 318. Frisby's reliance on *Westbrook* is unavailing. The Seventh

7

Circuit later explained that state law claims that fall outside of the scope of the RLA are those that are "person-specific and do[] not concern the terms and conditions of employment." *Miller*, 926 F.3d at 904. Thus, the claim in *Westbrook* was not preempted because it was specific to the individual plaintiff, who contended she had been wrongfully discharged in retaliation for submitting a worker's compensation claim, and it did not involve terms and conditions of employment. *See Westbrook*, 35 F.3d at 316. By contrast, Frisby's BIPA and negligence claims involve data privacy rights common to all of the defendants' employees and deal with a mandatory subject of collective bargaining: the mechanism through which workers clock in and out. *Id.* at 903-04. Under the RLA, these claims are appropriate determined by an adjustment board.

For these reasons, the Court dismisses Frisby's BIPA and negligence claims, counts 1 and 2 of Frisby's complaint, for lack of subject matter jurisdiction.

**B.    Claims for overtime pay**

Frisby has alleged that the defendants' failure to pay overtime wages violated the federal Fair Labor Standards Act (FLSA) (count 3), the Illinois Minimum Wage Law (IMWL) (count 4), and the Chicago Minimum Wage Ordinance (CMWO) (count 5). The defendants have moved to dismiss these for failure to state a claim, arguing that Frisby's allegations are too vague and conclusory to state a viable claim under any of these provisions.

    **1.    Applicable standard**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is "plausible on its face." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616,

8

621-22 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In ruling on a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the non-moving party. *O'Brien*, 955 F.3d at 621.

### 2. Sufficiency of allegations

FLSA and IMWL have parallel provisions that require employers to pay their workers one and a half times their regular rate for every hour worked in excess of forty in a workweek. *See* 29 U.S.C. § 207(a)(1); 820 ILCS 105/4a. Frisby has alleged that the defendants violated these statutes by failing to pay employees for overtime. The CMWO requires employers to pay workers the city's minimum wage for every hour worked in the city. Chi. Mun. Code Chap. 1-24-20. Frisby has alleged that the defendants violated the ordinance because they did not compensate him for the hours worked in excess of forty in many workweeks. Because Frisby's FLSA, IMWL, and CMWO are similar claims based on the same factual allegations, the Court assesses the sufficiency of the allegations underlying these claims together. *See, e.g.*, *LQD Bus. Fin., LLC v. Fundkite, LLC*, No. 19 C 4416, 2020 WL 635906, at *6 (N.D. Ill. Feb. 11, 2020) (Kennelly, J.) (assessing plausibility of FLSA and IMWL claims together); *Vann v. Dolly, Inc.*, No. 18 CV 4455, 2019 WL 1785589, at *2 (N.D. Ill. Apr. 24, 2019) (assessing plausibility of FLSA, IMWL, and CMWO claims together).

A claim for overtime wages is plausible if the plaintiff's factual allegations support a reasonable inference that there was at least one workweek in which he worked more

than forty hours and did not receive overtime pay. *See Hirst v. Skywest, Inc.*, 910 F.3d 961, 966 (7th Cir. 2018) (endorsing "one workweek" pleading standard from other circuits). Frisby has alleged that during his employment with Sky Chefs, between November 2015 and March 2019, he typically worked fifty to fifty-five hours a week. By the time he quit his job at Sky Chefs, he alleges, he had accumulated over one hundred overtime hours for which he was never compensated. These allegations are sufficient to support a reasonable inference that there was at least one week between November 2015 and March 2019 in which Frisby worked more than forty hours and did not receive overtime pay.

The defendants also argue that the Court should dismiss the overtime claims because they are based on rounding employees' hours worked to their shift hours, a permissible practice under FLSA regulations. The defendants are correct that 29 C.F.R. § 785.48(b) notes that employers may round employees' shift start and stop times. This regulation also states, however, that rounding is acceptable only if "used in such a manner that it will not result, over a period of time, in failure to compensate . . . employees properly for all the time they have actually worked." *Id.* Frisby has alleged that the defendants always rounded shift times down to employees' scheduled shift times and therefore did not compensate them for pre- and post-shift work. This supports a reasonable inference that the defendants' rounding practices—assuming that is what they are—were impermissible because they resulted in the failure to compensate employees for time actually worked.

The defendants also argue that their employees are not entitled to overtime pay for clocking in five to six minutes before the start of their shifts, because they were not

10

actually working during that time. In support of this argument, the defendants cite two cases in which the Seventh Circuit noted that "employees who clock in early do not have to be paid so long as they are not working." *Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019); *Kellar v. Summit Sealing Inc.*, 664 F.3d 169, 177 (7th Cir. 2011) (citing 29 C.F.R. § 785.48).

The defendants' reliance on this language is unavailing, at least in the current procedural context. The Seventh Circuit has explained that "work" includes activity "pursued necessarily and primarily for the benefit of the employer," including time an employee spends doing nothing, or doing nothing while waiting for something to happen. *Kellar*, 664 F.3d at 176 & n.2 (citing *IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005)). Frisby has alleged that the defendants required employees to clock in five to six minutes before the start of their shifts or they would be subject to discipline. This supports a reasonable inference that what employees were doing during this pre-shift time constituted work because the employees were engaged in activity primarily for the benefit of the defendants. Finding otherwise would require the Court to draw inferences in the defendants' favor, which is inappropriate on a motion to dismiss for failure to state a claim.

Finally, the defendants contend that the CMWO claim should be dismissed because Frisby has not alleged that he was working for them while physically present in Chicago, as required for the applicability of the ordinance. Frisby has alleged, however, that he performed work for the defendants at O'Hare International Airport, which is located in Chicago.

For these reasons, the Court denies the defendants' motion to dismiss counts 3,

11

4, and 5.

## Conclusion

For the foregoing reasons, the Court dismisses counts 1 and 2 of the plaintiff's complaint for lack of subject matter jurisdiction but otherwise denies the defendants' motion to dismiss [dkt. no. 12]. Defendants are directed to answer counts 3, 4, and 5 by no later than August 10, 2020, and both sides are directed to make Rule 26(a)(1) disclosures by August 17, 2020. They are to discuss and attempt to agree upon a discovery and pretrial schedule and are to file a joint status report in this regard by August 24, 2020. The case is set for a status hearing on August 27, 2020 at 9:05 a.m. by telephone, using call-in number 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 3, 2020