IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY FRISBY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SKY CHEFS, INC.,<br><br>Defendant. | Civil Action No. 19-cv-07989<br><br>Judge Matthew F. Kennelly<br><br>Magistrate Judge Jeffrey Cole |

**UNOPPOSED MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE PARTIES' CLASS AND COLLECTIVE ACTION SETTLEMENT**

This Court should grant final approval of the Parties' Class Action Settlement Agreement ("Settlement Agreement" or "Agreement") because it provides a fair, adequate and reasonable resolution of the wage and hour claims for all class members. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2005). The Settlement is also a fair and reasonable resolution of a bona fide dispute under the Fair Labor Standards Act, 29 U.S.C. 201 et seq. (the "FLSA"). The "non-claims made" settlement provides an average compensation of approximately $125.00 each to 2,184 Class Members. Each Class Member is receiving a minimum of $25.00, and all class members receiving more than the minimum payout will receive payment based upon the number of weeks they were employed by Defendant during the Class Period. The Class Members are receiving these settlement payments in exchange for releases that are limited to wage and hour claims, and no Class Members have objected to the Settlement. Only

one Class Member has opted out of the Settlement, demonstrating that the Class Notice communicated properly to the Class Members the process for doing so.

For these reasons, and as further discussed below, the Court should grant Plaintiff's Unopposed Motion for Final Approval, grant final certification, for settlement purposes, of the Class under Rule 23(b)(3) of the Federal Rules of Civil Procedure and 29U.S.C. § 216(b); approve the Settlement Agreement and its plan of allocation of the settlement proceeds as a final, fair, reasonable, adequate and binding release of all claims as set forth in Section III.3.c of the Settlement Agreement by all Class Members who have not timely opted out; approve the Settlement Agreement as a final, fair, reasonable, adequate and binding General Release of all claims as set forth in Section III.3.b of the Settlement Agreement by the Class Representative; provide that all Class Members who negotiate a settlement check irrevocably consent to join and opt into the FLSA collective action in this Action, and authorize Class Counsel to file with the Court their consents to join; and dismiss the Action with prejudice. The Court should also approve Class Counsel's request for an award of attorneys' fees and costs and for the Service Award to be made to the Class Representative. The Proposed Final Approval Order and Judgment is attached hereto as Exhibit 1.

**The Court's Preliminary Approval Order and Administration of Notice**

The details of the proceedings up through the Parties' Motion for Preliminary Approval of the Parties' Class Action and Settlement Agreement and Release are set forth in that unopposed motion, Doc. # 53, and are incorporated by reference herein. The Court issued an Order on May 20, 2021 that preliminarily approved the Settlement Agreement. The Order also approved the form and content of the proposed Notice of Class Action Settlement ("Notice"); set the

schedule for the filing of objections; and set a hearing ("the Fairness Hearing") for September 2, 2021 at 9:30 AM to determine whether to grant final certification of the Settlement Class, and the FLSA collective action, and final approval of the Settlement Agreement and plan of allocation, and final judgment dismissing the Action with prejudice; and to consider Class Counsel's request for an award of attorneys' fees and costs; and for a Service Award to be made to the Class Representative. The Court indicated that it will also consider and rule upon all timely filed and served objections from any Class Members.

**SUMMARY OF THE SETTLEMENT PRELIMINARILY APPROVED BY THE COURT AND THE ADMINISTRATION OF THE CLAIMS PROCESS**

The Court's Order preliminarily approving the Settlement incorporated the Parties' agreed definition of the settlement class under Fed. R. Civ. P. 23 and 29 U.S.C. §216, for settlement purposes only, and preliminarily and conditionally certified the following Settlement Class under Rule 23 and 29 U.S.C. § 216(b):

> All current and former non-exempt hourly paid employees who are or were employed by Sky Chefs, Inc. in Illinois for at least seven days at any point from December 5, 2016 to May 20, 2021, who have not excluded themselves from this Action. The term "Class Members" includes the Class Representative and all Opt-in Plaintiffs.

The Parties' Settlement Agreement provides a total gross settlement amount of $420,000.00, inclusive of attorneys' fees, expenses and costs, and a service award. Defendant will separately pay all settlement administration costs. Approximately $276,000.00 of the gross settlement amount will be paid to the Class Members. Each Class Member's estimated share of the settlement fund will be calculated based on an equitable formula that considers the number of weeks Defendant employed the Class Member during the period December 5, 2016 through May

20, 2021 (the "Class Period"). The Settlement Payment of each Qualified Class Member who worked for Sky Chefs for no more than eighteen weeks shall be $25. Payments for Class Members other than those receiving the $25 minimum payment, shall be calculated on a pro rata basis based on a percentage, calculated by dividing a numerator equaling the number of weeks that the individual was employed by Sky Chefs in a non-exempt hourly paid position during the Class Period by a denominator equaling the sum of all individual numerators. The release to which Class Members will be bound only releases wage and hour claims that were or could have been brought in this case under the facts alleged in the Complaint, including such claims under the Illinois Minimum Wage Law, 820 ILCS 105/1 et seq. (the "IMWL") and the City of Chicago Minimum Wage Ordinance, Chapter 1-24, Section 1-24-020, et seq. (the "Ordinance"), and all other state and local laws. Class Members will release their federal FLSA claims only if they negotiate their settlement checks. The checks will expressly advise Class Members that by signing or negotiating the checks, they are opting into the FLSA collective action and waiving their FLSA claims.

Pursuant to the Court's conditional certification of the settlement classes and preliminary approval of the Settlement Agreement, and pursuant to the terms of the Parties' Settlement Agreement, on or about May 27, 2021, Simpluris, Inc., the Class Administrator, ("Simpluris"), mailed 2,185 Notices to those person identified on the Class List provided by Defendant. The Declaration of Christina Fowler, a Principal at Simpluris, dated August 18, 2021, attached as Exhibit 2, confirms that initial mailing of the Notice; that 231 of those Notices were returned by the U.S. Postal Service; and, after skip-tracing those returns, that Simpluris was able to re-mail a total of 206 of those Notices, with only 25 of the Notices returned as undeliverable. Ultimately,

Simpluris will make payment to 2,184 class members. It has received a single valid opt-out; no other attempted opt-outs; and no objection forms in response to all mailings. The Administrator has indicated that the total average recovery under the settlement is approximately $126.26 per person, and the total highest recovery is approximately $317.30. See, Exhibit 2.

Neither Plaintiffs, Plaintiffs' counsel, Defendant, nor Defendant's counsel are aware of any objection to this settlement, timely or otherwise. (See, Exhibit 3, 2nd Brown Dec., ¶ 6).

## THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE FINALLY APPROVED

### A. This Court Should Approve the Parties' Settlement.

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Kaufman v. Am. Express Travel Related Services, Co*., 2016 WL 806546, at *7 (N.D. Ill. Mar. 2, 2016), appeal dismissed (July 5, 2016) quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). The proposed settlement, therefore, is the best vehicle for Plaintiff and the Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

#### 1. Final Rule 23 Certification for Purposes of Settlement is Warranted.

A court may approve a Rule 23 class action settlement that binds class members if, after proper notice and a public hearing, the court determines that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(3). Under Seventh Circuit precedent, a district court must, in evaluating the fairness of a settlement, consider "the strength of plaintiffs' case compared to the amount of defendant's settlement offer, an assessment of the likely complexity,

length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement, and whether the settlement negotiation is 'intense, vigorous, and at arm's length.'" *Synfuel Techs., Inc. v. DHL Express (USA) Inc.*, 463 F.3d 646, 653 (7th Cir. 2006)(quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)) *("Synfuel* Factors").

This Court has already performed that analysis in its examination of our motion seeking preliminary approval, and nothing has substantively changed since that analysis was conducted. We will nonetheless reiterate several of the factors here in connection with this Court's final approval analysis.

**a. Strength of the Merits Compared to the Settlement Amount.**

Here, Defendant contested whether *any* work was performed off the clock and whether rounding occurred to the Class Members' detriment. Plaintiff would face the risk that the Court may not allow the case to proceed on a class or collective basis. Even if Plaintiff could overcome that hurdle, Plaintiff would have had to prove, among other things, that he and other Class Members performed work for which they were not properly compensated and that Defendant had actual or constructive knowledge of that work. Defendant would have argued that Plaintiff did not meet that burden, and if it succeeded, neither Plaintiff nor the Class would be entitled to any damages. Plaintiff would have the burden of proving not only that some uncompensated work was performed with Defendant's knowledge, but also proving how much for purposes of damages calculations.

Given the difficulty in proving the underlying factual claims of unpaid off the clock work, coordinating the testimony of Defendant's management and payroll employees, and the expense and uncertainty of interpreting vast amounts of electronic data and payroll records to prove detrimental rounding, the Settlement Agreement is an excellent result for Class Members, particularly given the speed of the resolution and the value of the *pro-rata* settlement payments.

**b. Assessment of the Likely Complexity and Expense**

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendant would continue to vigorously defend this case through its experienced and competent counsel who have previously litigated large-scale wage class cases. If the litigation were to continue, Defendant would oppose Plaintiff's conditional certification motion. Plaintiff would file a motion to certify a Rule 23 class, and Defendant would oppose it. One or both parties would be likely to file for summary judgment. This intensive discovery and briefing process would consume tremendous amounts of time and resources for both sides and require substantial judicial resources to adjudicate and resolve. If the case could not be resolved on summary judgment, a fact-intensive trial would then be necessary to determine liability and damages. A trial would be lengthy and consume additional time and resources. It is likely the losing party would appeal the judgment.

This settlement avoids the prospect of several years of delay for Class Members in receiving any potential monetary relief through litigation.

**c. Opinion of Counsel**

As this Court is aware, Class Counsel are experienced practitioners in wage and hour class litigation. Counsel have exchanged substantial data for the class, along with specific information relating to the class demographics and individual workweeks in order to make a full comparison of this settlement and the merits of the case with their experience in resolving other substantial class litigation. Based upon that experience, in Class Counsel's opinion, this Settlement is an excellent result, and is fair, reasonable, and adequate for the Class. (2nd Brown Dec. ¶6).

It is appropriate for the Court to place significant weight on the strong endorsement of this Settlement by Class Counsel. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000); *see also Swift v. Direct Buy, Inc.*, No. 2:11-CV-401-TLS, 2013 WL 5770633, at *3 (N.D. Ind. Oct. 24, 2013). Counsel exercised their experience based on a knowledge of the facts of the case and the legal issues facing this particular Class, including conducting an independent analysis of the strength and weakness of the claims, the value of the claims, the time costs and expenses of protracted litigation, discovery, trial, appeals, and the competence of Defense counsel. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *Id*.

**2. Final Collective Action Certification is Warranted.**

Plaintiffs also seek final certification, for settlement purposes only, of the collective conditionally certified by this Court. It is well established that settlements in a Fair Labor Standards Act case must be approved by either a court or the U.S. Department of Labor. *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *4 (N.D. Ill. July 23, 2015) (citing *O'Brien v. Encotech Const. Servs., Inc.*, 183 F.Supp.2d 1047, 1050 (N.D. Ill. 2002).

When reviewing an FLSA collective action settlement, a court normally considers the following factors:

> (1) The complexity, expense, and likely duration of the litigation; (2) the reaction of the class settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation.

*Butler v. Am. Cable & Tel., LLC,* No. 09 CV 5336, 2011 WL 4729789, at *9 (N.D. Ill. Oct. 6, 2011); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990 (N.D. Ind. 2010). Once again, this Court has already reviewed these factors, and each these factors weigh in favor of approving the settlement, as this Court has already preliminarily concluded. We nonetheless emphasize several of these factors.

**a. The Reaction of the Class to the Settlement.**

The Class Members have been informed through a direct mailing of the parameters of the Class Settlement and their individual estimated payments. As indicated in the Administrator's Declaration, nearly 99% of the preliminarily-certified class and collective members actually received the mailed Notice, with only 28 of 2,185 Notices undeliverable. Plaintiff's counsel and the Administrator have fielded numerous telephone calls from the class members, and have addressed any questions raised by them. No Class Member has expressed any objection to settlement; instead they have been pleased with the result. (2nd Brown Dec., ¶ 6).

**b. The Range of Reasonableness of the Settlement Fund in Light of All the Risks of Litigation**

The settlement fund in this case is within the range of reasonableness. The Administrator has indicated that the total average recovery under the settlement is approximately $126.26 per person, and the total highest recovery is approximately $317.30. See, Exhibit 2. The consideration to be paid by Defendant to the Class here is considerable and the plan of allocation is reasonable. In Plaintiffs' counsels' experience, the amount of the fund is a reasonable result for the class members. 2nd Brown Dec., ¶ 5, 6. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F.Supp.2d at 1020; *see also Meyenberg v. Exxon Mobil Corp.*, 2006 U.S. Dist. LEXIS 97057 at *18 (S.D.Ill., June 6, 2006). Given that: (i) there is a risk of decertification of the class; (ii) not all class members may be able to prove that they were not paid for all time worked; and (iii) the class members' claims have the potential to be subject to and significantly diminished by Defendant's various affirmative defenses, the settlement reached is fair and reasonable, and provides a reasonable result for the class members. Plaintiffs and their counsel respectfully request that this Court approve the settlement.

**B. Named Plaintiff Should Be Awarded An Incentive Payment.**

The Settlement Agreement also contemplates an Incentive Payment to the Named Plaintiff to acknowledge his service to the class. Named Plaintiff Larry Frisby and his counsel request that an Incentive Payment of Five-Thousand Dollars ($5,000.00) be paid to Named Plaintiff. This payments would be in addition to any settlement payments that Plaintiff would receive in this matter. Mr. Frisby made significant contributions to the prosecution of this case. 2nd Brown Dec., ¶ 3. As Named Plaintiff, he provided valuable information to his counsel prior to and during litigation, and was in constant and detailed communication with counsel. In light of his ef-

forts resulting in a substantial settlement fund, an Incentive Payment to the Named Plaintiffs is appropriate. *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819 at *7 (S.D.Ill., Jan. 22, 2004) (awarding incentive fee of $20,000 to each named plaintiff).

**C. Plaintiffs' Counsels' Request for Attorneys' Fees and Costs Should be Approved.**

The Court should award Plaintiff's attorneys' fees sought, and should do so as a percentage of the total fund made available to the Class Members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); see *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003) (creation of common fund "entitles [counsel] to a share of that benefit as a fee"). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (*quoting Skelton v. G.M. Corp*., 860 F.2d 250, 252 (7th Cir. 1988)); *Kaplan v. Houlihan Smith & Co*., No. 12 Civ. 5134, 2014 WL 2808801, at *3 (N.D. Ill. June 20, 2014); see also *Boeing*, 444 U.S. at 478. The FLSA provides that reasonable attorneys' fees and costs shall be awarded to prevailing Plaintiffs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). If this Court grants final approval of the terms of the settlement agreement, Plaintiffs here will be prevailing parties, because they will have an award entered in their favor.

Defendant has agreed not to oppose Plaintiffs' counsels' request for fees and costs in an amount up to One Hundred Thirty-Nine Thousand Dollars ($139,000). Given the contentious

nature of the litigation and the speedy resolution of this matter without the expenses and delay of additional discovery, Plaintiffs' counsels' efforts in obtaining compensation for the Plaintiffs and Class Members were swift and executed efficiently.

The attorney's fees and costs reimbursement here is equal to 33.09% of the Settlement Fund. The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class. Other courts have similarly recognized that "[t]he percentages awarded in common fund cases typically range from 20 to 50 percent of the common fund created [,]" *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249–50 (S.D.Ohio 1991), and that fees within this range are "presumptively reasonable," *Vaszlavik v. Storage Technology Corp*., 2000 WL 1268824 at *4 (D.Colo. March 9, 2000). See also *Cimarron Pipeline Construction, Inc. v. National Council on Compensation Insurance,* 1993 WL 355466 at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.") *See also, e.g*., *Kolinek v. Walgreen Co*., 311 F.R.D. 483, 502–03 (N.D.Ill.2015) (36% fee award); *Whittington v. Taco Bell of Am., Inc.*, 2013 WL 6022972, at *6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Braun v. Wal–Mart, Inc.,* 2009 WL 1592532 (Minn. Dist. Ct. June 1, 2009) ( 38% fee award). No Class Member has objected to the request for fees and costs.

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994)—the favored approach in the Seventh

Circuit is to use the percentage of the fund method in common fund cases like this one. "Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to ex ante." *In re FedEx Ground Package System, Inc. Employment Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) *citing In re Synthoid Mktg. Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003). The percentage of the fund method promotes early resolution, and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours, *In re Synthroid Mktg. Litig.*, 325 F.3d at 979-80, and it preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566 (noting "advantages" of percentage of the fund method's "relative simplicity of administration").

## CONCLUSION

An extremely high percentage of Class Members have received notice of this Settlement. The proposed settlement brings substantial value to the Class Members. Each of the Plaintiffs that have not opted-out - and only one has done so to date - will be able to share in the settlement fund in a manner that is proportionate to the number of weeks he or she was employed by Defendant during the class period. No Class Member has objected to the request for fees and costs. The fact of significant monetary recovery without the uncertainty or risks of trial and appeals qualifies this settlement as a reasonable result. The settlement reached here is fair and reasonable, is in the best interests of the settlement class, and provided each class member with appropriate due process notice. The Settlement Agreement allows each class member to recover,

without any cost, their pro-rata share of the Settlement Amount. The alternative to this settlement would be continued time-consuming litigation which would have increased substantially the amount of fees and expenses incurred by Class Counsel while not necessarily increasing the recovery from Class members, and with potential of no recovery at all. The above determinative factors all support the conclusion that final approval should be granted.

Respectfully submitted,

By: /s/ Jeffrey Grant Brown
Jeffrey Grant Brown
One of Plaintiffs' Attorneys

Jeffrey Grant Brown
Jeffrey Grant Brown, P.C.
65 West Jackson Boulevard
Suite 107
Chicago, Illinois 60604
312.789.9700

Glen J. Dunn, Jr.
Glen J. Dunn & Associates, Ltd.
121 West Wacker Drive
Suite 1414
Chicago, Illinois 60601
312.546.5056